PRESS LIQUORS, INC., Appellant,

v.

Frank E. WEAKLEY, Chairman, Alcoholic Beverage Control Board,
et al., Appellees.

No. 17232.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 16, 1962.

Decided Feb. 14, 1963.

Edgerton, Circuit Judge, dissented.

Mr. James J. Laughlin, Washington, D. C., for appellant.

Mr. John R. Hess, Asst. Corp. Counsel for District of Columbia, with whom Messrs. Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, and Hubert B. Pair, Asst. Corp. Counsel, were on the brief, for appellees.

Before Mr. Justice REED, retired,* and EDGERTON and WILBUR K. MILLER, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

The appellant is engaged in the retail liquor business in the District of Columbia under a license issued by the Alcoholic Beverage Control Board. The appellees are the members of that Board and the Commissioners of the District of Columbia.

On May 16, 1962, the Alcoholic Beverage Control Board caused to be served on Press Liquors written notice that it "may not, effective May 16 1962 purchase or receive alcoholic beverages until further notice from this office. Reason: Delinquent." On the same day, the Board notified all wholesalers in the District of Columbia that Press Liquors could not purchase or receive alcoholic beverages from them until further notice.

On August 2, 1962, Press Liquors sued the present appellees in the United States

* Sitting by designation pursuant to Sec. 294(a), Title 28 U.S.Code.

District Court, praying for a temporary restraining order and preliminary injunction to restrain and enjoin the enforcement of the ABC regulation under which the May 16 notice had been given and

"* * * to restrain and enjoin the defendants from interfering with plaintiff corporation's rights to liquidate his [*sic*] past due accounts and to make proper credit arrangements with said wholesalers and said preliminary injunction to remain in force and effect until this case is finally heard on the merits."

The complaint alleged the Regulation was unauthorized and invalid, and that Press Liquors would be forced to cease business operations "within the next few days" unless it obtained injunctive relief. A temporary restraining order pursuant to the prayer of the complaint was issued by the District Court August 2, but after a hearing on August 14 the court made findings of fact, stated conclusions of law, and then denied the motion for a preliminary injunction. This court stayed the Board's order of May 16, 1962, "insofar as such action by the Board may prohibit appellant from purchasing and receiving alcoholic beverages for which appellant makes payment in cash." Press Liquors appeals from the District Court's order of August 14 denying the motion for a preliminary injunction.

The appellant attacks as unauthorized § 2–128 of the Alcoholic Beverage Control Regulations, which is in pertinent part as follows:

"(a) No alcoholic beverage shall be sold by any manufacturer or wholesaler to any retailer, nor shall any retailer purchase any alcoholic beverage, except for cash or on terms requiring payment by the purchaser on or before the 15th day of the month following the month of purchase or delivery, which is hereby determined and declared to constitute a reasonable extention of credit, as provided by Sections 18 and 19 of the Alcoholic Beverage Control Act.

* * * * *

"(c) No manufacturer or wholesaler shall sell, except for cash, any alcoholic beverage to any retailer with knowledge that such retailer is in arrears for the payment of any alcoholic beverage, nor shall any retailer purchase any alcoholic beverage except for cash while in arrears for the payment of any alcoholic beverage, as provided by this rule. Effective on and after the 1st day of December, 1957, however, no retailer who remains in arrears for any period of time in excess of 30 days following the 15th day of the month following the month of any purchase or delivery made on or subsequent to the effective date hereof may purchase or acquire any beverage from anyone, whether for cash or otherwise, and both a retailer who receives and a manufacturer or wholesaler who sells or delivers beverages in violation hereof shall be subject to *the penalties under the Act* * * *." (Emphasis added.)

The questions presented are: (a) whether the foregoing regulation of credit is authorized by the statute, and (b) whether the Board acted within its authority on May 16, 1962, when it prohibited purchases by or sales to Press Liquors because it had violated the credit regulation.

■■ Contrary to the contention of the appellees, the Alcoholic Beverage Control Act for the District of Columbia does not prohibit a manufacturer or wholesaler of alcoholic beverages from lending money or property to a retailer. The prohibitions of that nature contained in §§ 18 and 19 of the Act (§§ 25–119 and 25–120, D.C.Code (1961)) apply only to a manufacturer or wholesaler who has such a substantial interest in the business of its customer, or in his premises, as in the judgment of the Board may tend to influence the customer to purchase beverages from him. In that situation the Board may revoke

the license of the customer, subject to review by the Commissioners. Each section provides that its drastic restrictions shall not prohibit the sale of beverages in the ordinary course of business, and the reasonable extension of credit therefor. Accordingly, the recital of § 2–128(a) of the Regulations that a reasonable extension of credit is provided by §§ 18 and 19 (§§ 25–119 and 25–120, D.C.Code) is not accurate. But the erroneous recital of statutory support for the Regulation does not invalidate it, for we observe that under § 25–107 of the Code the Commissioners have "full power and authority to prescribe the terms and conditions under which alcoholic beverages may be sold by each class of licensees; * * *" We conclude, therefore, that the Regulation in question validly prescribes the terms upon which credit may be extended.

██ We hold, however, that neither the Act nor the Regulation authorizes the Board to prohibit further purchases by a retailer who is delinquent in the payment of his accounts to wholesalers. The only sanctions which the Board may impose upon a licensee for violating the rules or regulations promulgated pursuant to the Act are the revocation or suspension of his license. Section 25–118, D.C.Code (1961). In this case, however, the Board did not revoke or suspend the license of Press Liquors. Instead it imposed a different sanction which is not authorized by the Act: that Press Liquors could no longer buy beverages, even for cash. The appellees admit this was not a suspension of the license, but an entirely different and immediately effective penalty for violation of the credit regulation. The procedure followed by the Board emphasizes the fact that its action of May 16, 1962, was not a suspension of the license; for § 25–118 of the Code provides that before revocation or suspension the licensee must be given an opportunity to be heard in his defense. It does not appear from the record that this was done.

The Board acted arbitrarily and without authority in giving notice on May 16, 1962, that thereafter the wholesalers could not sell alcoholic beverages to Press Liquors and the latter could not purchase them. It follows that the motion for a preliminary injunction should have been granted.

Reversed and remanded.

EDGERTON, Circuit Judge (dissenting).

D.C.Code § 25–107 authorizes the Commissioners "to prescribe such rules and regulations not inconsistent with this chapter as they may deem necessary * * * to control and regulate * * * sale * * * of alcoholic beverages * * *." They are given "full power and authority to prescribe the terms and conditions under which alcoholic beverages may be sold by each class of licensees * * *." Manufacturers are a "class of licensees" and so are wholesalers. D.C.Code § 25–111. Section 2–128(c) of the Alcoholic Beverage Control Regulations provides that "no retailer who remains in arrears" in paying for beverages, for more than a specified time, "may purchase or acquire any beverage from anyone, whether for cash or otherwise * * *." This prevents manufacturers and wholesalers from selling to retailers who had rather spend their cash for more liquor than pay their overdue debts. This seems to me within the granted authority and entirely reasonable.

The statement in the Regulation that violators will be "subject to the penalties under the Act" seems to me innocuous. I cannot see it as a threat to impose some unspecified penalty *not* under the Act. I think the statement is irrelevant for the further reason that the Board imposed no penalty, under the Act or otherwise. The Board simply informed appellant, in effect, that its delinquency made the Regulation apply.[1]

The Regulation "tends, in a most direct way, to promote the program. No

---

1. It does not appear that the defendants have interfered or threatened to inter-

fere "with plaintiff corporation's rights to liquidate his [sic] past due accounts",

**138**

doubt it tends also to promote the program in an indirect way by indicating that violation may not pay. But an incidental minatory effect does not turn a remedial order into a penal one." L. P. Steuart & Bro., Inc. v. Bowles, 78 U.S. App.D.C. 350, 352, 140 F.2d 703, 705 (1944), aff'd, 322 U.S. 398, 64 S.Ct. 1097, 88 L.Ed. 1350 (1944); followed in Country Garden Market v. Bowles, 78 U.S. App.D.C. 381, 141 F.2d 540 (1944), cert. denied, 322 U.S. 752, 64 S.Ct. 1264, 88 L. Ed. 1582 (1944); Copper Plumbing & Heating Co. v. Campbell, 110 U.S.App. D.C. 177, 290 F.2d 368 (1961). The notice "did not * * * require the appellant to do anything by way of retribution for any past acts or offenses." Gallagher's Steak House v. Bowles, 142 F.2d 530, 535 (2d Cir., 1944), cert. denied, 322 U.S. 764, 64 S.Ct. 1288, 88 L.Ed. 1591 (1944).

although, by asking that the defendants be enjoined from such interference, the

complaint implies that they are interfering.